## EMILE F. BERGERON, petitioner.

Suffolk.   January 22, 1915. — March 4, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Attorney at Law.   Rules of the Board of Bar Examiners.   Supreme Judicial Court.*

St. 1914, c. 670, amending R. L. c. 165, § 40, as previously amended by St. 1904, c. 355, § 1, whereby the board of bar examiners were authorized to make rules as to the qualifications of applicants for admission to the bar, by providing that such an applicant "shall not be required to be a graduate of any high school, college or university," does not affect Rule 7 of the board of bar examiners, by which a number of ways of satisfying the educational requirements of applicants for admission to the bar other than by being a graduate of a high school, college or university are established.

*Whether* St. 1914, c. 670, providing "that an applicant for admission to the bar shall not be required to be a graduate of any high school, college or university," is constitutional, here was mentioned as a question that had been adverted to in argument which it was not necessary to determine in the present case and in regard to which authorities in other jurisdictions were not in harmony.

When the question is presented to this court, whether a rule prescribing the qualifications of applicants for admission to the bar, which was made by the board of bar examiners and was approved by this court under R. L. c. 165, § 40, as amended by St. 1904, c. 355, § 1, is unreasonable and therefore ought not to be enforced, the previous approval of the rule by this court without the benefit of argument raises no presumption in favor of the rule and the question must be considered as if it were presented for the first time.

Under R. L. c. 165, § 40, as amended by Sts. 1904, c. 355, § 1; 1914, c. 670, Rule 7, made by the board of bar examiners and approved by this court, prescribing certain educational requirements something less in substance than the equivalent of an education in the average high school as a preliminary qualification of applicants for admission to the bar, is not unreasonable nor unduly severe.

Rule 7, made by the bar examiners and approved by this court, prescribing certain educational requirements as a preliminary qualification of applicants for admission to the bar, provided that it should go into effect at a date three years after the date of its approval, by which all persons who had begun their legal studies before the adoption of the rule were given time to complete the usual period of study and to make two attempts to pass the bar examinations before the rule became effective as to them, and this was reasonable notice of the enforcement of the rule.

PETITION, filed in the Supreme Judicial Court on December 26, 1914, for permission to be examined for admission to the bar as an attorney at law in this Commonwealth.

By an order of court the petition was referred to the board of bar examiners to report thereon to the court. The board reported that under the provisions of Rule 7 of the board of bar examiners in regard to general education the applicant was not yet eligible to take a bar examination, and that the provisions of Rule 7 were not in conflict with St. 1914, c. 670, and were still in force as to the question of eligibility.

The case was heard upon the petition and report and an agreed statement of facts by *Pierce*, J., who ruled that the report should be confirmed, and, at the request of the petitioner, reported the case for determination by the full court.

The case was argued at the bar in January, 1915, before *Rugg*, C. J., *Loring, Braley, Crosby, & Pierce*, JJ., and afterwards was submitted on briefs to all the justices.

*J. J. Cummings*, for the petitioner.

*H. R. Bailey*, for the board of bar examiners, submitted a brief.

RUGG, C. J. This is a petition for examination for admission to the bar. The facts are these: The petitioner has completed three and two thirds years' work at a high school in Fall River, without having graduated, has spent three years in the study of law at a law school and has graduated with the degree of LL.B., has taken and failed to pass examinations for admission to the bar in June and again in December, 1913, and now desires to take the examination for a third time. He has complied with all the preliminary requirements except that part of Rule 7 of the "Rules of Board of Bar Examiners" relative to "General Education," which was established and approved on March 28, 1911, and took effect on February 2, 1914, and which is printed in a

footnote.* The present petition was filed on December 26, 1914. The petitioner has not complied with any of the provisions of that rule. Being neither a graduate of any such school as is mentioned in (*a*) and (*b*), he has not passed the examination prescribed in (*c*).

It is contended that this rule is abrogated by St. 1914, c. 670, which took effect on September 1, 1914. Section 1 of that act amended R. L. c. 165, § 40, as previously amended by St. 1904, c. 355, § 1, wherein the board of bar examiners were authorized to make rules subject to the approval of the Supreme Judicial Court as to the qualifications of applicants for admission to the bar, by adding the proviso that such an applicant "shall not be required to be a graduate of any high school, college or university." As matter of construction, it is plain that this statute in no way affects the rule. The rule does not require any such qualification as is described in the statute. It simply establishes an educational test which may be met in several ways. One is by being a graduate of a college. Another is by being a graduate of

---

* "*After February 1, 1914,* an applicant must show by certificate or certificates that he, —

(*a*) Is a graduate of a college, or has passed the entrance examinations of a college, or of the College Entrance Examination Board, or examinations substantially equivalent thereto; or has complied with the entrance requirements of a college; or

(*b*) Is a graduate of a day high school, or of a school of equal grade; or

(*c*) Has passed the examinations given for admission to the State normal schools of Massachusetts in the following subjects: —

    I. Language. — English, with its grammar and literature.

    II. United States History. — The history and civil governments of Massachusetts and the United States, with related geography and so much of English history as is directly contributory to a knowledge of United States history.

    III. (*a*) Latin or
       (*b*) French.

    IV. (*a*) Algebra or
       (*b*) Plane Geometry.

    V. Any two of the following: —
       (*a*) Physiology and Hygiene,
       (*b*) Physics,
       (*c*) Chemistry,
       (*d*) Botany,
       (*e*) Physical Geography."

a day high school or school of equal grade. But the applicant also may qualify by passing the entrance examinations of a college, or of the college entrance examination board, or of equivalent examinations, or by complying with the entrance requirements of a college, or by passing the examinations for entrance to the State normal schools of Massachusetts in the specified subjects. Thus five ways of satisfying the educational requirements other than by being a graduate of a high school or college are defined.

It has been suggested that the statute must be construed as expressing an intent on the part of the Legislature to compel the bar examiners to cease from enforcing the rule. Doubtless all statutes are to be interpreted in such way as to render effective their manifest purpose. Remedial acts are to be construed so as to afford the relief intended. But no intent can be read into a statute which is not there either in plain words or by fair implication. There are no means of ascertaining the purpose and effect of a statute except from the words used when given their common and approved meaning. They are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment. But they cannot be stretched beyond their reasonable import to accomplish a result not expressed.

It is not necessary to determine the constitutionality of this statute, a question adverted to at the argument, as to which authorities in other jurisdictions are not in harmony, for the reason that the statute does not affect the rule.

It is urged, however, that the rule is unreasonable in itself and hence ought not to be enforced. This presents an important question. The rule was approved by the justices of this court before it was promulgated. That was done without the benefit of argument. It now is the duty of the court to guard most carefully against any influence flowing from previous thought about the matter. The circumstances are analogous to those where the justices of this court have given an advisory opinion under the Constitution to the executive or legislative departments of government and subsequently are obliged to reconsider the same matter as a court between parties litigant. *Green* v. *Commonwealth,* 12 Allen, 155, 164. *Young* v. *Duncan,* 218 Mass. 346. The determination of the question is approached with every effort to im-

partiality. It has been considered in a manner as careful and thorough as a sense of judicial duty can impose.

The question thus presented in its broader aspects is whether any qualification in general education reasonably can be required as a prerequisite for admission to the bar. The natural impulse of any believer in a republican form of government is that no barrier ought to be raised against any individual engaging in any pursuit. Unrestricted freedom of choice and absolute equality of opportunity in every employment are elementary principles. Hence, at first sight any restrictions seem contrary to the spirit of our Constitution. But it is apparent that there are limitations imposed by the nature of things which cannot be ignored nor overleaped. The ignorant cannot undertake a handicraft without training. Statutes in recent years as to plumbers, pharmacists and many branches of the civil service furnish numerous illustrations of the recognition of this principle. The passing of an examination by teachers in the public schools has been required for many years.

The principle of preliminary examinations is thus thoroughly established as well by legislative recognition as in reason. Its proper scope is the only matter to be determined. On that point it becomes necessary to consider somewhat closely the duties of an attorney at law. He is in a sense an officer of the State. From early days he has been required to take and subscribe an "oath of office" which forbids him from promoting and even from wittingly consenting to any false, groundless or unlawful suit, from doing or permitting to be done any falsehood in court, and which binds him to the highest fidelity to the courts as well as to his clients. The courts being a department of government, this is but another way of saying that his obligation to the public is no less significant than that to the client. He is held out by the Commonwealth as one worthy of trust and confidence in matters pertaining to the law. Of course no one can know all law. But every attorney ought to possess learning sufficient to enable him either to ascertain the law or to determine his limitations in that regard for the purpose of giving safe advice. It is impracticable to attempt to name the matters about which he may be asked to act. Stated comprehensively they include the liberty, the property, the happiness, the character and the life of any citizen or

alien. They touch the deepest and most precious concerns of men, women and children. The occasions which lead one to seek the assistance of a lawyer often are emergencies in that person's experience which prevent the exercise of critical discernment in selecting a counsellor. They involve the utmost trust and confidence. In proportion as the client is poor, ignorant or helpless, and hence less likely to be able to exercise judgment in making choice, the necessity of adequate learning and purity of character on the part of every lawyer increases in importance. Thus the interest of the public in the intelligence and learning of the bar is most vital. Manifestly the practice of the law is not a craft, nor trade, nor commerce. It is a profession whose main purpose is to aid in the doing of justice according to law between the State and the individual, and between man and man. Its members are not and ought not to be hired servants of their clients. They are independent officers of the court, owing a duty as well to the public as to private interests. No one not possessing a considerable degree of general education and intelligence can perform this kind of service. Elemental conditions and essential facts as to the practice of law must be recognized in the standards to be observed in admission to the bar.

The right of any person to engage in the practice of the law is slight in comparison with the need of protecting the public against the incompetent. The propriety of requiring some educational qualifications as a prerequisite for admission to the bar seems plain. The exact extent of general education to be required is a matter about which opinions may differ. Indeed, the bar examiners have presented modifications of the present rules for approval by the court, which are now under consideration. But that circumstance has nothing to do with the present petition.

The rule here assailed requires something less in substance than the equivalent of an education in the average high school, as we understand it. It may be satisfied by showing that one is a graduate of a high school or college or has passed examinations which are recognized generally as evidence of the possession of those qualifications. Or it may be met by passing the examinations in designated subjects at the State normal schools. It was stated at the argument that arrangements with the officers in charge of these institutions had been made for the taking of such

examinations by candidates for the bar. There is no unjust discrimination in the rule. Such certificates of graduation are accepted in many institutions of learning as evidence of qualification. The normal school examination, while more restricted as to subjects than the courses in many high schools, affords some range of choice and appears to be reasonable in scope. The educational requirement does not seem unduly severe.

It is urged that it is a requirement which many men who have achieved signal success in the practice of the law could not have met at the time they were admitted to the bar. Doubtless that is true. But requirements which could not have been complied with in remote districts, where facilities for the acquisition of knowledge and general instruction were scanty, hardly can be regarded as a universal standard for other times and places. In this Commonwealth, where there is a free public library in every city and town with a single exception and where every family is within reach of a free public library, where the compulsory school age is high and where provision for learning by day and evening schools is ample, the educational requirement of the rule is not beyond the reasonable reach of those possessing the native ability, the energy and the perseverance necessary to enable them to render moderately valuable service to the public as attorneys.

It may be also that many members of the bar now in practice might not be able to pass such an examination. The mental strength developed by the study necessary to master the required subjects in general education is more significant than the book learning implied. The facts learned may be forgotten, the trained mind remains.

An examination at best is an imperfect standard. But it is the only practicable expedient known for determining intellectual fitness in cases like this. The subjects chosen for this examination are designed to eliminate those whose general intelligence, learning and mental capacity are inadequate to enable them to be useful to that part of the public who may seek their aid. Even if it should happen in rare instances that one who could be a useful attorney should be excluded, that is on the whole far better than to have the public harmed and clients subject to injury which would be irreparable by the admission of considerable numbers of those who are deficient in education and incapable

in fact. There must be a general rule. Almost every general rule of municipal or natural law in some instances appears to work a hardship upon an individual. The law of gravitation acts indifferently upon the just and the unjust.

All those who had commenced their legal studies before the adoption of this rule were by its terms given time enough to complete the usual period of study and make two attempts to pass the bar examinations before it became effective. Thus reasonable notice was given.

Measured by the standards established in other States, the requirement of this rule is reasonable. It appears from a compilation of the rules for admission to the bar published in 1913 by the West Publishing Company, that there are general educational requirements for admission to the bar in twenty-two States of the Union.* In most of these States graduation at a recognized high school or its equivalent is required, and a certificate of graduation is accepted as evidence of qualification. In Pennsylvania and New York at least the educational requirement is appreciably more severe. In view of all these considerations we are satisfied that the rule is not unreasonable and that the petitioner is not entitled to take the examination as to his legal qualifications until he has passed an examination as to his general education.

*So ordered.*

---

\* Colorado, Connecticut, Delaware, Illinois, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Vermont, Washington, West Virginia, Wisconsin, Philippine Islands. The examination on legal subjects in Louisiana appears to demand a considerable knowledge of Latin and probably of French.