IN RE APPLICATION OF THOMAS J. COURTNEY FOR
ADMISSION TO THE BAR

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued January 4—decided March 22, 1972

*John J. Hunt,* for the applicant.

*Frederick L. Comley,* for the state bar examining committee.

LOISELLE, J.  On November 13, 1970, the state bar examining committee petitioned the Superior Court to vacate that court's orders of May 15, 1970, and October 8, 1970, granting the respondent, Thomas J. Courtney, a temporary license to practice law.  The court issued an order directing the respondent to appear before it and show cause why the petition should not be granted.  After a hearing on this petition, the court vacated the orders granting a temporary license and revoked it.  From this judgment, the respondent appealed.  In accordance with Practice Book § 762, this court granted permission for an expedited appeal.

The respondent graduated from New York Law School in 1952 and became a member of the New York bar in April, 1953.  In 1969, the respondent moved with his family to the town of Ridgefield. After residing in Connecticut for six months, he applied to the state bar examining committee for the certificate of his educational qualifications which is required by Practice Book § 13.  A few days later he applied to the Superior Court for admission to the bar on motion.  He advised the clerk's office that he had applied for a certificate of educational qualifications but had not yet received it.  As a result, a clerical assistant attached a note to the respondent's application for admission indicating that the certificate was lacking.  On notice that he was expected to appear at the May 11, 1970, meeting of the standing committee on recommendations for admission to the bar for Fairfield County, the respondent attended the meeting and informed the committee that he had

not received the certificate but had received a letter from an employee of the secretary of the bar examining committee stating that the application would be submitted to the bar examining committee.

Finding the respondent otherwise qualified and assuming New York Law School to have been an accredited school, the standing committee on May 15, 1970, recommended to the Fairfield County bar that the respondent be admitted to the bar. That body adopted the committee's recommendation and on the same day the committee's chairman made the recommendation to the Superior Court. The committee did not indicate to the court that the respondent's educational certificate had not been issued. The court entered an order admitting the respondent to the bar and he was sworn in as an attorney, licensed to practice law in the state of Connecticut under a temporary license. The respondent then rented an office in the town of Ridgefield, furnished it for the practice of law, sent out announcements of the opening of his office and commenced the practice of law.

At a special meeting on August 17, 1970, the bar examining committee denied the respondent's application for a certificate as to his educational qualifications on the ground that New York Law School was not an accredited law school at the time of his graduation. At its annual meeting, held September 14, 1970, the bar examining committee, with the chairman of the standing committee from Fairfield County present, discussed the respondent's case and agreed that the standing committee present the facts to the judge who had presided at the respondent's admission on May 15, 1970. The standing committee then filed a written report of the situation with the court. Because accreditation involves a prolonged investigation, the committee concluded that the conditions

present when New York Law School was accredited in February, 1954, existed when the respondent was admitted to the New York bar in April of 1953, and that the school should, therefore, be considered properly accredited. On October 8, 1970, the court held a hearing on the issue at Stamford, without prior notice to anyone except the respondent. At that hearing, the chairman of the standing committee disclosed all that had happened and stated that the committee considered the respondent's law school as properly accredited. The judge, thereafter, endorsed on the report of the standing committee: "Admission of Thomas J. Courtney to practice on a temporary license in this State is granted." On learning of the court's decision, the bar examining committee brought the present action and the Superior Court for Fairfield County, after hearing the parties, vacated the orders of May 15, 1970, and October 8, 1970, and revoked the respondent's temporary license.

We direct our attention to the sole assignment of error which the respondent briefed, i.e., that the court lacked the power to vacate the judgment of May 15, 1970, admitting him to practice, after the session at which the judgment was rendered had ended.

Proceedings for admission of attorneys to practice law in our courts are not actions or suits at law but are in the nature of investigations by the court or their representatives to determine whether the particular candidate is qualified to become an officer of the courts. *Heiberger* v. *Clark,* 148 Conn. 177, 182, 169 A.2d 652; *In re Application of Dodd,* 131 Conn. 702, 707, 42 A.2d 36; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, 165 A. 211. The end result of the proceedings is in the na-

ture of a judgment from which an appeal lies to this court. *Heiberger* v. *Clark,* supra, 183; *In re Application of Dodd,* supra, 707; *O'Brien's Petition,* 79 Conn. 46, 59, 63 A. 777. It is the claim of the respondent that, as the granting of the temporary license on May 15, 1970, was a judgment, it could not be opened or modified after the first Tuesday following July 4, 1970. See *Cichy* v. *Kostyk,* 143 Conn. 688, 696, 125 A.2d 483; *Poneleit* v. *Dudas,* 141 Conn. 413, 417, 106 A.2d 479; *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47.

The subject of this appeal is the Superior Court's revocation of the respondent's license to practice law in our courts. Because of the peculiar facts surrounding the granting of the temporary license and the total disclosure of facts by the respondent, it is evident that all parties did not want to cast any implication of disgrace on the respondent. Although the proceedings were not given any label, they were in fact proceedings to disbar. Unfortunately, the word "disbar" connotes misconduct. Prior to 1934, the rule provided that the Superior Court could, for just cause, "suspend or displace" attorneys. The 1934 revision of the Practice Book, which traces its legislative history from 1821 to 1934 and the opinions of the court during that time, changed the phrase "suspend or displace" to "suspend and disbar" on the premise that the power in the Superior Court was that of "expulsion from the bar, or in other words, his disbarment." See Practice Book, 1934, pp. 23, 24, § 11 n. To disbar, however, is "to deprive of the right to appear in court as an attorney"; Funk & Wagnalls, New Standard Dictionary; and refers to a court's "rescinding an attorney's license to practice at its bar"; Black, Law Dictionary (4th Ed.); whether for misconduct or otherwise.

The issue then is whether the Superior Court may remove the respondent from practice after the time for reopening the judgment admitting him has passed. Practice Book § 19 provides the answer: "The Superior Court may, for just cause, suspend or disbar attorneys." Without reference to whether its judgment admitting an attorney to practice is void or voidable or subject to being opened, the court, on hearing the present petition, had the power to remove the respondent as a practicing attorney in our courts if just cause existed. *State* v. *Peck,* 88 Conn. 447, 458, 91 A. 274. "The power to declare this forfeiture is a summary one inherent in the courts, and exists not to mete out punishment to an offender, but that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." *In re Durant,* 80 Conn. 140, 147, 67 A. 497.

The court is not restricted in this function to removal solely for misconduct. Any unfitness— whether moral, mental, educational or otherwise— will constitute just cause for denying one the power to act as an attorney.

While the Superior Court has established disbarment procedures only in the case of misconduct, the court, in the absence of specific provisions, has the power to conduct proceedings as it sees fit; *In re Durant,* supra, 148; *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 12, 22 A. 441; so long as there is no denial of due process of law. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238, 77 S. Ct. 752, 1 L. Ed. 2d 796; *In re Application of Dinan,* 157 Conn. 67, 71, 244 A.2d 608; note, 2 A.L.R.3d 1266. Here, there is no question but that the procedures accorded the respondent due process.

When the court admits a person to the bar, it warrants to the public the sufficiency of that person's educational qualifications. When the court learns that a member of the bar is not entitled to that warrant, the court has the duty to remove its representation.

Confronted with the fact that the respondent had not satisfied the educational requirements of Practice Book § 13, the court had no choice but to remove the respondent from practice as an attorney. *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652.

Determining the standards for legal preparation is an exercise of judicial power. "This power has been exercised with the assistance of committees of the bar appointed and acting under rules of court." *In re Application of Warren,* 149 Conn. 266, 272, 178 A.2d 528; *Heiberger* v. *Clark,* supra, 185. The power to determine what law schools shall be approved as furnishing a sufficient educational basis for the practice of law is properly vested in the bar examining committee. *Blodgett ex rel. Bazil* v. *Boardman,* 127 Conn. 475, 477, 18 A.2d 370; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 417, 165 A. 211. Accreditation of law schools in accordance with Practice Book § 13 and the regulations of the bar examining committee, is a reasonable standard which provides "a crucible for testing" the sufficiency of legal preparation. *In re Application of Marsching,* 161 Conn. 166, 168, 286 A.2d 306. While courts have broad discretion in applying the rules regulating qualifications, "specific requirements of the rules as to such things as age, residence, or graduation from an approved school" or citizenship cannot be waived. *In re Application of Warren,* supra, 273; *In re Application of Griffiths,* 162 Conn. 249, 294 A.2d 281. "[S]pecific, concrete requirements

must be met in any event." *In re Application of Dodd,* 132 Conn. 237, 244, 43 A.2d 224; *In re Application of Plantamura,* 149 Conn. 111, 114, 176 A.2d 61. Approval of the bar or a judgment of the court cannot alter that necessity. *In re Application of Dodd,* supra, 245.

Practice Book § 13 requires a member of the bar of another state (amended in 1971 to include Puerto Rico and the District of Columbia) seeking admission to the Connecticut bar to satisfy the state bar examining committee as to his educational qualifications. This requirement is a specific condition precedent not only to obtaining a temporary license but to invoking remaining provisions of Practice Book § 13. *In re Application of Dodd,* supra. The respondent did not and cannot satisfy this requirement and, therefore, is not entitled to practice law in this state.

There is no error.

In this opinion the other judges concurred.